# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| RON WALLACE, | ) | CASE NO. 1:13-cv-01017 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| THE METROHEALTH SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |

## I.  Procedural Background

Plaintiff Ron Wallace (hereinafter "Wallace") filed his Complaint on May 6, 2013,

alleging a number of civil right actions against his former employer, the MetroHealth System

(hereinafter "MetroHealth").[1]  (ECF No. 1.)  On June 7, 2013, MetroHealth filed a Motion to

Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 8.)  Wallace filed a

memorandum in opposition on July 8, 2013.  (ECF No. 9.)  Thereafter, the parties respectively

filed a reply and surreply.  (ECF Nos. 11 & 12.)  On August 14, 2013, the parties, in accordance

with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, consented to this Court's jurisdiction.  (ECF No.

---

[1]  In its filings, MetroHealth does not dispute that it is a "county hospital" created
pursuant to Ohio Revised Code ("O.R.C.") §§ 339 *et seq.*, or that it is subject to 42
U.S.C. § 1983.  *See Wright v. MetroHealth Medical Ctr.*, 58 F.3d 1130, 1132 (6th Cir.
1995) ("MetroHealth is a county hospital operating under Chapter 339 of the Ohio
Revised Code.  As such, it is subject to the mandates of the Constitution and 42 U.S.C. §
1983.")

15.)  MetroHealth's motion is now ripe for adjudication.

## II.  Civil Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Well-pleaded allegations must be taken as true and construed most favorably toward the non-moving party.  *See, e.g., Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[, as] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Although a court may not grant a Rule 12(b)(6) motion based on its disbelief of the factual allegations contained in the complaint, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), a court "need not accept as true legal conclusions or unwarranted factual inferences."  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must appear 'plausible' on its face, if all of its factual allegations are assumed to be true."  *Alli v. City of New York*, 2012 WL 4887745 (S.D.N.Y. Oct. 12, 2012) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 560–70.  Consequently, a claim should not be dismissed unless it is unsupported by the law or the facts alleged are insufficient.

When ruling on motions to dismiss, a Court should normally look no further than the complaint, but "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's]

2

claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir.1997) (citations omitted).

### III. Factual Allegations

In pertinent part, the Complaint contains the following allegations. On July 10, 1995, Wallace, who is African-American, began his employment with MetroHealth. (Compl. ¶¶7-9.) He was promoted to Director of Environment Services ("EVS") on March 13, 1999. *Id*. EVS was one of five departments in Support Services; the directors of the other four departments were all Caucasian. *Id*. at ¶¶9-10. Wallace received outstanding annual evaluations between 1995 and 2010. *Id*. at ¶¶13, 16.

In June of 2010, a multi-drug resistance organism ("MDRO"), in this case a serious strain of bacteria, began jeopardizing the health and safety of patients and staff at MetroHealth. *Id*. at ¶¶17-18. During 2010, the MDRO caused several deaths among patients. *Id*. at ¶¶19, 21. In late 2010, MetroHealth created a task force to address the MDRO issue. *Id*. at ¶23. At a meeting held on January 25, 2011, Wallace "sought to explain that the MDRO, acknowledged as a matter of public concern" was not the fault of his department and advised that the origin of the MDRO needed to be determined. *Id*. at ¶29. During said meeting, Jennifer Hanrahan, D.O., chair of MetroHealth's Infection Control, blamed the spread of the MDRO on Wallace. *Id*. at ¶30. The accusation against Wallace was "unnecessarily confrontational, condescending and disrespectful," conduct to which Caucasian employees at the same level were not subjected. *Id*. at ¶32. Wallace complained to Alfred Connors, M.D., chair of MetroHealth's MDRO task force, who did nothing to correct the statements made by Dr. Hanrahan. *Id*. at ¶33.

Prior to her February 2011 departure, Barbara McBee, Wallace's supervisor and the Vice President of System Services, evaluated Wallace and gave him an excellent performance

evaluation. *Id.* at ¶¶14-15, 36, 41.  MetroHealth claimed that Wallace was not given a performance evaluation in February 2011, and retained an outside vendor to evaluate his work from February 2010 to January 2011. *Id.* at ¶46.  On April 11, 2011, MetroHealth reevaluated Wallace, but MetroHealth's Chief Operating Officer and Human Resources Department would not release a copy of the evaluation to Wallace. *Id.* at ¶¶48-49, 56-57.  MetroHealth placed Wallace on a Performance Improvement Plan ("PIP"). *Id.* at ¶50.

The outside vendor retained by MetroHealth added eight positions to Wallace's department, stretching the budget of EVS. *Id.* at ¶¶51, 53.  The outside vendor subsequently accused Wallace of being over budget, which was used as a pretext leading to Wallace's termination. *Id.* at ¶¶52, 65 & 72.  MetroHealth blamed Wallace for having his department understaffed despite having previously frozen his employee requisitions. *Id.* at ¶¶66-67.  After Wallace's termination, MetroHealth posted eighteen staff openings in the EVS department, positions that MetroHealth refused to fill while Wallace was director. *Id.* at ¶68.

On July 25, 2011, Wallace filed charges with the Ohio Civil Rights Commission ("OCRC"). *Id.* at ¶58.  On November 3, 2011, following illegitimate evaluation procedures, MetroHealth terminated Wallace's employment based on race. *Id.* at ¶65.

### IV.  Analysis

MetroHealth construes the Complaint as raising the following five causes of action: (1) an action pursuant to 42 U.S.C. §1983 for a deprivation of rights secured by the First and Fourteenth Amendment of the U.S. Constitution; (2) an action pursuant to §1983 for a deprivation of rights under the Due Process clause of the Fourteenth Amendment; (3) an action pursuant to §1983 for a deprivation of rights under the Equal Protection clause; (4) an action

pursuant to 42 U.S.C. §1981 for a deprivation of equal contract rights based on race and retaliation; and, (5) an action pursuant to Ohio Revised Code ("O.R.C.") §§ 4112.01, *et seq.* for race discrimination and retaliation.  (ECF No. 8-1 at 1-2.)  The Complaint does not set forth separate causes of action, but contains a myriad of claims in its first paragraph.  (ECF No. 1 at ¶1.)  The Court agrees that the Complaint attempts to raise the five claims stated above.  Wallace does not appear to challenge MetroHealth's interpretation of the Complaint in his memorandum in opposition or surreply.  (ECF Nos. 9 & 12.)

Though brought under Fed. R. Civ. P. 12(b)(6), the essence of MetroHealth's motion is that the Complaint has not been plead with sufficient specificity to satisfy the requirements of *Iqbal* and *Twombly*.  (ECF No. 8-1 at 2.)

**A.  Municipal Liability under § 1983**

At the outset, MetroHealth argues that it is not a "person" under the meaning of § 1983; and, that: (1) it cannot be held liable on the basis of *respondeat superior* and, (2) the Complaint has failed to allege that one of its policies or customs was the moving force behind the alleged constitutional violation.  (ECF No. 8-1 at 6-7.)  To the extent MetroHealth is suggesting that it is not a "person" for the purposes of § 1983, such an assertion is incorrect.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (holding that local governments were intended to be included among the "persons" to which § 1983 applies).  However, MetroHealth is correct that § 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*. *Id*. at 692  ("[§1983] cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor."); *accord Briner v. City of Ontario*, 370 Fed. Appx. 682, 699 (6th Cir. 2010).

5

> A city's custom or policy can be unconstitutional in two ways: 1) facially unconstitutional as written or articulated, or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers. *Id.* Where the identified policy is itself facially lawful, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (quoting Harris, 489 U.S. at 388 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. In other words, the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious." *Id.* at 412; *see also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997).

*Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006). Therefore, "'municipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (*citing Pembaur v. Cincinnati*, 475 U.S. 469, 483-484 (1986); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)); *King v. Marion County Sheriff's Dep't*, 2010 U.S. Dist. LEXIS 64205 (E.D. Tenn. June 28, 2010) ("Plaintiffs must identify the policy, connect the policy to the county itself, and show the particular injury was incurred because of the execution of that policy.")

MetroHealth argues that Wallace has failed to sufficiently allege a policy, practice or custom. (ECF No. 8-1 at 6-7.) A number of decisions post-dating *Iqbal* and *Twombly* have dismissed § 1983 claims where a plaintiff, in a conclusory manner, merely asserts that a policy, practice or custom of a municipality violated his or her rights. In *Hutchison v. Metro. Gov't of Nashville & Davidson, Cnty.*, 685 F. Supp. 2d 747, 749 (M.D. Tenn. 2010), the defendant argued that the plaintiff failed to state a viable claim for municipal liability under § 1983 because the complaint merely recited the elements of a municipal liability claim without

6

pleading additional facts. The plaintiff responded that his claim (*i.e.* that the police officer's conduct resulted from a custom, policy or practice of the defendant) was sufficient to withstand a motion to dismiss. *Id.* The *Hutchison* court, while acknowledging it was troubled by the application of *Iqbal* in the context of § 1983 municipal liability claims, nevertheless, found plaintiff's assertion – that defendant municipality failed to adequately train its officers in stopping vehicles and/or ordering passengers out of those vehicles – was insufficient where there was no additional factual support the complaint. *See also Cunningham v. Cleveland Police Dep't*, 2010 U.S. Dist. LEXIS 140335 at **16-17 (N.D. Ohio, Dec. 22, 2010) (although plaintiff argued that he would provide proof of the municipality's unconstitutional policy at trial, the court found that the lack of factual allegations in the complaint describing a specific custom or policy was insufficient to show a plausible claim under *Twombly* and *Iqbal*); *Ghaster v. City of Rocky River*, 2010 WL 2802685 at *7 (N.D. Ohio May 12, 2010) ("Plaintiffs fail to identify what City policy or practice was in violation of *Monell*. Plaintiffs argue, without citation to law, that they are not required to do so. However, the recent Supreme Court case of [*Iqbal*] makes clear that Plaintiffs are in fact required to identify the practice or policy that forms the basis of their claim.") report and recommendation adopted as modified, 2010 WL 2802682 (N.D. Ohio July 13, 2010); *Wooten v. Spigner*, 2011 WL 5075692 (E.D. Mich. Sept. 8, 2011) report and recommendation adopted, 2011 WL 5075713 (E.D. Mich. Oct. 25, 2011).

This Court has also dismissed an action where there was no attempt to identify a policy, practice, or custom in the complaint. *See Scott v. Giant Eagle, Inc.*, 2013 U.S. Dist. LEXIS 63578 (N.D. Ohio May 2, 2013). However, in *Scott*, this Court indicated that it "share[d] the reservations of the *Hutchison* court that applying *Iqbal* too strictly in situations where

knowledge of a custom, policy, or practice is unobtainable absent some preliminary discovery could lead to unfair results ...” *Id*. at **11-12.

Unlike in *Scott* and the other aforementioned cases, Wallace's allegations herein are not perfunctory or conclusory. Reading the Complaint as a whole, Wallace alleges that MetroHealth either: (1) deviated from its existing performance review policies; or, (2) instituted a new policy – both designed to secure his termination. Moreover, Wallace alleged that this new policy or deviation from the old policy was not enforced against the other directors who were all Caucasian.[2] (Compl. at ¶¶13-16, 36, 41-50, 54, 57, 71-72.) While the exact contours of MetroHealth's alleged policy regarding evaluations is not precisely set forth, the Court finds the Complaint sufficient for this stage of the proceedings. While MetroHealth might deny altering or instituting a new policy to secure the ouster of Wallace, the Court must accept his factual allegations as true. Discovery will undoubtedly shed greater light on MetroHealth's evaluation policies and whether they were altered to dismiss Wallace for impermissible reasons.

This conclusion is consistent with a recent decision from the Western District Court of Texas where the plaintiffs did not identify a formal policy statement of race-based harassment or discrimination that was officially adopted and promulgated by a school board. *Fennell v. Marion Indep. Sch. Dist.*, 2013 WL 3994649 at *13 (W.D. Tex. Aug. 2, 2013). Nonetheless, despite the plaintiffs' failure to identify a specific policy, the *Fennell* court found that plaintiffs set forth sufficient facts to survive dismissal, because it described repeated instances of disparate

---

[2] Wallace further alleges that an outside vendor was retained at substantial cost by MetroHealth, that the funds to pay the vendor were taken from his department's annual budget, and that MetroHealth, thereafter, accused him of being over budget which was used as a pretext leading to his termination. (Compl. at ¶¶41-43, 51-52, 65, 72.)

treatment based on race and alleged that the school board was deliberately indifferent to this custom. *Id*.

As Wallace has sufficiently alleged that MetroHealth's policies, practices or customs resulted in disparate treatment, the Court will examine whether the Complaint sufficiently sets out the five causes of action Wallace seeks to bring.

**1.      First and Fourteenth Amendment Claim Under § 1983**

The parties agree that to withstand a motion to dismiss a § 1983 First Amendment retaliation claim, a plaintiff must plead factual allegations establishing that: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (*citing Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*)); *accord Buchko v. County of Monroe*, 506 Fed. Appx. 400, 404 (6th Cir. 2012).

Relying on *Ghaster v. City of Rocky River*, 2010 U.S. Dist. LEXIS 71018 (N.D. Ohio July 13, 2010), MetroHealth argues that the Complaint does not identify the nature or substance of the protected speech. (ECF No. 8-1 at 8.) However, the Complaint in the case at bar differs from the complaint filed in *Ghaster*, wherein the sum and substance of the plaintiff's allegation was as follows:

> "[O]n September 6, 2007 defendant City of Rocky River charged plaintiff Pam Ghaster with two counts of disorderly conduct persisting for allegedly yelling 'course (sic) and abusive language' that was allegedly heard by two neighbors. There was no probable cause to charge plaintiff since the language allegedly used

9

by plaintiff was protected by the First Amendment."

*Id*. at *14.  The *Ghaster* court explained that the plaintiff failed to allege any set of facts that would clarify: (1) whether she was participating in a constitutionally protected activity, or (2) whether the adverse action was motivated by the constitutionally protected act.  *Id*.  The court further noted that "the content of her speech and the circumstances surrounding it are absent from the Complaint."  *Id*.

By contrast, Wallace's allegations plainly state that his speech was about the MDRO that threatened public safety at MetroHealth, and the need to ascertain its origin.  He also alleged the circumstances surrounding his speech, namely that several patients had died from the MDRO prior to the referenced meeting and that the doctor in charge of infection control sought to wrongfully blame his department.  While Wallace could have been more precise in describing his speech at the meeting, the pleadings are significantly more detailed than the bare conclusions in *Ghaster*.  As such, the same result (*i.e.* dismissal) is not warranted.

MetroHealth also argues that Wallace's speech was purely personal.  (ECF No. 8-1 at 8.)  Pursuant to the Supreme Court's holding in *Connick v. Myers*, 461 U.S. 138, 147 (1983), "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  The Complaint plainly alleges that Wallace denied being responsible for the MDRO, speech that could be characterized as a personal interest.  Nonetheless, his allegations can also be construed as advocating in the interest of public safety.  "[W]hether an employee's speech addresses a matter

10

of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 576 (6th Cir. 1997) (*quoting Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).  The *Chappel* court explained the "'motive which underlies an employee's statements is a relevant, but not necessarily dispositive factor' when considering whether an employee's statements may be fairly characterized as relating to any matter of political, social, or other concern to the community." *Id.* (citations omitted).  As Wallace's motive is not dispositive and since it would be inappropriate to speculate as to what it was, dismissal is not appropriate.  Wallace's allegations are sufficiently specific to state a claim upon which relief can be granted.[3]

Finally, MetroHealth argues that Wallace has failed to allege any retaliation or adverse action resulting from his speech.  (ECF No. 801 at 8-9.)  However, reading the Complaint as a whole, Wallace plainly alleges that subsequent to his speech at the meeting, his work performance was subject to uncharacteristic scrutiny, that he was placed on a PIP, and finally terminated.  MetroHealth's motion to dismiss this specific cause of action is denied.

### 2.    Due Process Claim Under § 1983

The parties agree that in the Sixth Circuit, a plaintiff may prevail on a § 1983 procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; *or* (2) by proving a deprivation of property pursuant to a "random and unauthorized act" and that available state remedies would

---

[3]  MetroHealth's argument that Wallace's speech concerned only internal personnel disputes is a conclusion that this Court cannot reach at this juncture.  MetroHealth cites *Brown v. Trenton*, 867 F.2d 318 (6th Cir. 1989) in support of its argument, but overlooks one major difference.  In *Brown*, the court was confronted with a summary judgment rather than a Rule 12(b)(6) motion.

11

not adequately compensate for the loss.  (ECF Nos. 11 at 8; 12 at 8, *citing Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).

In the Complaint, Wallace does not expressly state that he is asserting a property interest in his job.  Furthermore, the briefs do not clarify this issue.  Despite this shortcoming, the Court does not agree with MetroHealth that the Complaint is so vague that it requires dismissal.  Given the general essence of the allegations, the Court construes Wallace's claim as asserting that his employment with MetroHealth was his property.

> In considering when a person has a property right in a benefit such as governmental employment, the Supreme Court has stated, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Roth*, 408 U.S. at 577. [The Sixth Circuit] ha[s] previously held that tenured public employment constitutes a property right requiring due process protections.  *See, e.g., Cook v. Charter Twp. of Mt. Morris*, No. 96-1762, 1997 U.S. App. LEXIS 17954, 1997 WL 401184, at *3 n.2 (6th Cir. July 15, 1997) (stating that it is undisputed that a full-time police officer has a property interest in continued employment).

*Hange v. City of Mansfield*, 257 Fed. Appx. 887, 895 (6th Ohio 2007) (finding that the plaintiff, a firefighter, clearly had a property interest in his tenured public employment with the fire department, which pursuant to a collective bargaining agreement, could only be terminated for just cause).  The parties have not briefed the issue of whether Wallace had a legitimate claim of entitlement to his employment with MetroHealth.  However, "the Federal Rules of Civil Procedure place the burden on the moving party to demonstrate that the plaintiff failed to state a claim for relief" under Rule 12(b)(6).  *Bangura v. Hansen*, 434 F.3d 487, 497 (6th Cir. 2006).  MetroHealth has failed to point to any law that would effectively preclude a finding that Wallace

had a property interest in his employment.[4]

Therefore, assuming *arguendo* that Wallace had a property right in his employment, he must allege a deprivation of that right resulting from an established state procedure that itself violates due process rights *or* from a random and unauthorized act for which available state remedies are inadequate. Wallace alleges the latter and asserts that MetroHealth "deviated from its normal procedures in order to facilitate his termination." (ECF No. 1 at ¶72.) Furthermore, Wallace's allegation is not merely conclusory, as the Complaint alleges that MetroHealth re-evaluated him – despite his previous good marks – for the same time period, hired an outside vendor creating a budget shortfall in Wallace's department for which he was unjustly blamed, and instituted a hiring freeze in his department until after his termination yet simultaneously blamed him for being understaffed. (ECF No. 1 at ¶¶ 36, 46, 51-52 & 66-70.)

Therefore, MetroHealth's motion to dismiss Wallace's § 1983 procedural due process claim is denied.

### 3. Equal Protection Claim Under § 1983

Wallace also seeks to maintain an action for a violation of the Equal Protection Clause by alleging that MetroHealth treated Caucasian directors more favorably under the color of state law. (ECF No. 1 at ¶71.)

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction, the equal protection of the laws." In *Nordlinger v. Hahn*, 505 U.S. 1, 10, 120 L. Ed. 2d 1, 112 S. Ct. 2326

---

[4] MetroHealth also has not pointed to any documents that would demonstrate Wallace lacked a lack of property interest in his job. However, even if such evidence had been presented, a court should normally look no further than the complaint or documents referenced in the pleadings if they are attached to a motion to dismiss. *Weiner*, 108 F.3d at 89.

> (1992), the Supreme Court explained that "the Equal Protection Clause does not
> forbid classifications. It simply keeps governmental decisionmakers from treating
> differently persons who are in all relevant respects alike."  If legislation does not
> burden a fundamental right or target a suspect classification, it will withstand
> constitutional scrutiny so long as it bears a rational relationship to a legitimate
> state interest.  *Vacco v. Quill*, 138 L. Ed. 2d 834, 117 S. Ct. 2293, 2297 (1997);
> *Romer v. Evans*, 517 U.S. 620, 631, 134 L. Ed. 2d 855, 116 S. Ct. 1620 (1996).

*Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 531 (6th Cir. 1998); *accord Zerod v. City of Bay City*, 2006 U.S. Dist. LEXIS 9279 (E.D. Mich. Mar. 9, 2006).  "To state an equal protection claim, a plaintiff must adequately plead that the government [treats certain people] disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Raymond v. O'Connor*, 2013 U.S. App. LEXIS 9782, 8-9 (6th Cir. May 14, 2013) (*citing Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

According to MetroHealth, Wallace's allegation that Caucasian directors were treated more favorable is simply a legal conclusion that a court is not obligated to accept under *Iqbal*.  (ECF No. 8-1 at 11.)  The Court disagrees.  Wallace alleges that the MetroHealth deviated from normal procedures in February 2011 when it decided to re-evaluate him – a procedure that was not applied to any of the Caucasian directors.  (ECF No. 1 at ¶¶47, 54.)  Wallace also alleges that MetroHealth froze the number of employees in his department and yet hired an outside vendor at significant cost.  (ECF No. 1 at ¶¶41-45, 52, 66-70.)  Later, Wallace alleges that MetroHealth blamed him for both being over budget and understaffed despite not having any control over these decisions.  *Id*.  Wallace alleges that none of the Caucasian directors were subjected to similar actions regarding their budgets.  *Id*. at ¶45.  These factual allegations amount to more than mere legal conclusions.  Wallace has sufficiently plead that, as the only

14

African-American director at MetroHealth, he was treated disparately as compared to similarly situated persons (*i.e.* the Caucasian directors).

Finally, MetroHealth argues that even if Wallace has sufficiently plead that Caucasian directors were treated more favorably, he has failed to allege any facts supporting a discriminatory purpose. (ECF No. 8-1 at 12.) In another case, a defendant similarly argued that a plaintiff failed to sufficiently plead a *prima facie* Title VII claim because she had not alleged sufficient facts to show an intent to discriminate. *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). While recognizing that the present action is not a Title VII action, many of the same issues are present in an equal protection claim. In *Keys*, the Sixth Circuit ruled:

> The district court's requirement that Keys's complaint establish a *prima facie* case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent. In *Swierkiewicz v. Sorema*, the Supreme Court unanimously held that the *prima facie* case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement. 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). As the Court reasoned, "it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Id.* at 511, 122 S.Ct. 992. The Court explained that the precise requirements of a *prima facie* case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. *Id.* at 512, 122 S.Ct. 992. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims. *Id.* at 511–12, 122 S.Ct. 992. The Supreme Court concluded that the ordinary rules of notice pleading apply and upheld the complaint because it gave "fair notice" of the basis of the plaintiff's claims. *Id.* at 514, 122 S.Ct. 992.

*Keys*, 684 F.3d at 609. The Sixth Circuit further noted that neither *Twombly* nor *Iqbal* undermined the holding of *Swierkiewicz*. *Id.* In the instant case, discovery could result in direct evidence of discriminatory intent, circumstantial evidence of discrimination, or it could produce neither. *Twombly* and *Iqbal* merely established a "plausibility" standard, *Id.* at 609, and do not

require plaintiffs to make specific allegations they could not in good faith support without discovery.

          **4.**        **Equal Contract Rights Claim Under § 1981**

Pursuant to 42 U.S.C. § 1981:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Nonetheless, § 1981 does ***not*** confer a separate cause of action from § 1983. Instead, an alleged violation of the rights secured by § 1981 must be vindicated by a § 1983 action. As explained by the United States Supreme Court:

> We hold that the express "action at law" provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor. Thus, to prevail on his claim for damages against the school district, petitioner must show that the violation of his "right to make contracts" protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases.

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989); *accord Arendale v. City of Memphis*, 519 F.3d 587, 598-99 (6th Cir. 2008); *Lipkotvich v. County of Wayne*, 2012 WL 4513596 (E.D. Mich. Oct. 1, 2012) ("Based on Sixth Circuit law, there exists no independent cause of action of race discrimination against municipalities by § 1981 and, even if such a cause of action exists, the race discrimination claim is analyzed under § 1983. Count I, the 42 U.S.C. § 1981 race discrimination claim must be dismissed."); *Hidden Village, LLC v. Vity of Lakewood*, 867 F. Supp.2d 920, 956 (N.D. Ohio Mar. 30, 2012) (dismissing *sua sponte* the plaintiff's § 1981 claim against a municipality and individuals named in their official capacities

16

based on *Arendale*); *Harmon v. The Kroger Co, et al.*, 2010 WL 1418340 (W.D. Ky. Apr. 2, 2010) (dismissing § 1981 claim as § 1983 is the exclusive mechanism to vindicate violations of § 1981); *McCormick v. Miami* University, 693 F.3d 654, 662 (6th Cir. 2012) (extending the holding of *Arendale* and finding that § 1983 is the "exclusive mechanism" to vindicate violations of § 1981 by an individual state actor acting in his individual capacity).

Therefore, to the extent Wallace seeks to maintain a separate and distinct cause of action for a violation of § 1981, his claim must be dismissed.  Nonetheless, Wallace may maintain a § 1983 action for a violation of the rights secured by § 1981, though he is limited to the remedies available in § 1983 actions.  MetroHealth maintains that it is entitled to a dismissal of this claim because Wallace has not identified any alleged statutory right or an employment contract relationship.  (ECF No. 8-1 at 13.)

It is unclear whether MetroHealth's position is that Wallace is an "at-will" employee and, therefore, does not possess a contract under § 1981.  Such an argument has been rejected by the Sixth Circuit in *Aquino v. Honda of Am., Inc.*, 158 Fed. App'x 667 at n. 3 (6th Cir. 2005).  The *Aquino* court acknowledged that "[a]lthough the Supreme Court held in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), that § 1981 does not apply to all racially harassing behavior that occurs after the formation of a contract, the Court later recognized that Congress had overturned this result by altering the statute in 1991.  *Jones v. R.R. Donnelley & Sons, Inc.*, 541 U.S. 369, 372-73, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004)."  *Id.* The Sixth Circuit Court of Appeals explained that it had not previously "ruled that discriminatory discharge suits by at-will employees cannot be brought under § 1981," and, in any case, such a holding would have been overturned by the Supreme Court's ruling in *Jones*.

*Aquino*, 158 Fed. App'x at n. 3. (further observing that five circuits have ruled that § 1981

potentially protects at-will employment, while none have ruled to the contrary).  Furthermore,

the *Aquino* court explained that whether an at-will employment relationship constitutes a

contract is a matter of state law, and "[a]t least two trial courts within this circuit have held that

§ 1981 applies to at-will employment in Tennessee and Ohio."  *Id.* (citations omitted); *see also*

*Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1049-50 (5th Cir. 1998)

("We conclude that the better view is that, irrespective of being subject to at-will termination,

such an employee stands in a contractual relationship with his employer and thus may maintain a

cause of action under § 1981.")

Therefore, Wallace may maintain a § 1983 action against MetroHealth for an alleged

violation of his rights under § 1981.

**B.   O.R.C. § 4112 Claim**

**1.  Race Discrimination**

MetroHealth argues that Wallace's claim under O.R.C. § 4112 should be dismissed,

because he has failed to allege a *prima facie* case of discrimination as set out in *Wright v.*

*Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).  (ECF No. 8-1 at 13-14.)  To demonstrate

a *prima facie* case, the plaintiff must show that "(1) he or she was a member of a protected class;

(2) he or she suffered an adverse employment action; (3) he or she was qualified for the position;

and (4) he or she was replaced by someone outside the protected class or was treated differently

than similarly-situated, non-protected employees." *Id.* (citations omitted).  The Sixth Circuit has

often reviewed claims under O.R.C. § 4112 together with Title VII claims, as they are subject to

the same evidentiary standards.  *See, e.g., Lentz v. City of Cleveland*, 333 Fed. Appx. 42, 45 (6th

18

Cir. 2009) ("the familiar *McDonnell Douglas* framework guides Lentz's discrimination claims under federal and Ohio law."); *Conley v. City of Findlay*, 266 Fed. Appx. 400, 404 (6th Cir. 2008) ("The Ohio Supreme Court has held that the analysis used to evaluate claims under § 4112.02 is identical to the analysis used for Title VII.") (*citing Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n*, 575 N.E.2d 1164, 1167 (Ohio 1991)); *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("Ohio courts examine state employment discrimination claims in accordance with federal caselaw interpreting Title VII.."); *Goodsite v. Norfolk & Southern Ry.*, 2013 U.S. Dist. LEXIS 107334 (N.D. Ohio July 31, 2013) (considering the plaintiff's Title VII and § 4112 retaliation claims together as they "are generally subject to the same analysis").

Wallace has alleged that he is a member of a protected class (African-American), that he suffered an adverse employment (termination), and that he was qualified for his position as director (consistently positive performance evaluations).  (ECF No. 1 at ¶¶9, 13 & 68.)  As such, MetroHealth's argument hinges on the fourth requirement – that Wallace was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.

First, as discussed above, the Sixth Circuit has found that it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment case, as discovery could result in evidence of direct discrimination.  *Keys*, 684 F.3d at 609.  As such, a failure to plead a *prima facie* case is not fatal to a complaint.  Second, the Court has already addressed the argument that Wallace failed to plead sufficient facts that he was treated differently than similarly-situated,

non-protected employees. Finally, MetroHealth's argument that Wallace has not alleged that he was replaced by persons outside of his protected class is immaterial. (ECF No. 8-1 at 15.) The fourth requirement of a *prima facie* case is disjunctive and requires, at most, that Wallace was replaced by someone outside the protected class **or** was treated differently than similarly situated, non-protected employees. Wallace has sufficiently plead differential treatment.

### 2. Retaliation

A plaintiff presents a *prima facie* case of retaliation by establishing that: (1) he engaged in protected activity; (2) the employer knew of this protected activity; (3) the employer then took adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *A.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013) (*citing Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). Nonetheless, "[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Id*. (*quoting Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

With regard to Wallace's retaliation claim, he has alleged that he engaged in protected activity by filing a charge of discrimination with the Ohio Civil Rights Commission. It can reasonably be inferred that MetroHealth knew Wallace filed such a charge and he suffered a materially adverse employment action when he was terminated. Reading the Complaint as a whole, Wallace has alleged there was a causal connection between the protected activity and the adverse action. Wallace need not, however, identify with great precision the causal connection at this early stage. The fairly close temporal proximity of filing the OCRC charges with his termination, just over three months later, is certainly a strong factor that could, after discovery, sufficiently demonstrate a causal connection. *See Randolph v. Ohio Dep't of Youth Servs.*, 453

20

F.3d 724, 733 (6th Cir. 2006) ("Although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection."); *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363–64 (6th Cir. 2001) ("While it is true that temporal proximity alone is insufficient to establish a causal connection for a retaliation claim, there are circumstances where temporal proximity considered with other evidence of retaliatory conduct would be sufficient to establish a causal connection.") (internal citations omitted)).  While *Twombly* changed the pleading requirements in federal actions, it does not require a plaintiff to completely develop his or her case prior to the commencement of discovery.

As such, MetroHealth's motion to dismiss Wallace's Ohio law-based claims is denied.

### IV.  Conclusion

For the foregoing reasons, Defendant MetroHealth's Motion to Dismiss (ECF No. 8) is DENIED.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: October 22, 2013